United States Court of Appeals,

Fifth Circuit.

No. 94-11124.

Donald R. BROWN and Robert T. Davis, Plaintiffs-Appellants,

v.

CSC LOGIC, INC., Defendant-Appellee.

May 13, 1996.

Appeal from the United States District Court for the Northern District of Texas.

Before WISDOM, GARWOOD and JONES, Circuit Judges.

WISDOM, Circuit Judge:

Plaintiffs-appellants, Donald Brown and Robert Davis, filed suit against their former employer, the defendant-appellant, CSC Logic, Inc. ("CSC Logic"), alleging that the company terminated their employment in violation of the Age Discrimination in Employment Act ("ADEA").[1] The district court granted a motion for summary judgment in favor of CSC Logic, and dismissed the case. For the reasons that follow, we AFFIRM.

## I. BACKGROUND

CSC Logic is a Texas corporation which provides data processing and administrative services to financial institutions. It is a wholly-owned subsidiary of its parent company, CSC. At all times relevant to this suit, Winston Kimzey was the Chief Executive Officer, and responsible for employment decisions regarding the appellants.

---

[1] 29 U.S.C. § 621 *et seq.*

1

CSC Logic hired appellant Brown as the Director of Marketing in January 1984. Shortly thereafter, the company obtained the Ford Motor Company as a client. In order to provide better services to Ford, CSC Logic created the Insurance Service Center ("ISC") to handle Ford-related needs. At around the same time, the company also created the Vehicular Single Interest Client Support Department ("VSI") to assist clients with monitoring insurance loans. Brown assumed responsibility for both new departments, while still maintaining his existing marketing duties. He continued in this capacity for the next several years.

In January 1991, Kimzey consolidated the VSI with the main Client Support Department and assigned operation of the combined operation to Greg Shimkus, the employee who was already managing the main Client Support Department. About a year later, Kimzey also reassigned responsibility of the ISC to Shimkus. Brown retained responsibility for marketing, and his salary and benefits remained the same until his termination sixteen months later.

CSC Logic hired appellant Davis as Director of Logic Management Services, Inc., in January 1989. In June of that year, the company reorganized its financial department. It hired Linda Long as Manager of Financial Accounting, and promoted Davis to Chief Financial Officer of CSC Logic. Davis continued in this capacity until his termination.

From 1985 until 1992, one of CSC Logic's largest clients was the Ford Motor Company. This account generated 40-45% of the company's revenues. In February 1992, Ford canceled its contract

with the company. As a result, CSC Logic altered its 1993 fiscal year budget (which took effect in April 1992) to reflect plans for a massive employee layoff. In mid-1992, Ford unexpectedly agreed to continue with the company until the end of the year. This event caused a windfall for fiscal year 1993. CSC Logic therefore did not lay off employees as planned, and actually gave an across-the-board raise to all employees, excluding officers.

In November 1992, CSC Logic began budgeting for fiscal year 1994. Aware of the impending loss of the Ford contract, the company again had to reduce costs. CSC Logic renegotiated its office lease, and released excess office space. It eliminated contributions to the employee benefits insurance reserve, and to the company's bad debt reserve. It reduced anticipated bonus payments, eliminated expected salary increases, and reduced capital expenditures. Finally, the company laid off seventy-four employees.

In spite of these efforts, expenses remained high. Near the end of March, 1993, Kimzey and appellant Davis traveled to CSC's corporate headquarters in California to present the proposed budget for 1994. CSC was not satisfied with the 7.4 percent operating margin in the budget and directed CSC Logic to rebudget to allow for a ten percent margin. In response, Davis prepared a report concerning over-staffing in various departments (not including his own), and proposed a revised budget that reflected an operating margin of thirteen percent.

Shortly before the appellants' terminations, CSC Logic held a

management meeting, attended by both appellants, the other vice presidents, and Kimzey. At the meeting, Davis again stressed that the company was over-staffed, and that expenses, including salaries, needed to be reduced.

Four days later, on April 16, 1993, Kimzey terminated both appellants' employment at CSC Logic, allegedly for economic reasons. Davis, age 58, and Brown, age 44, served as two of the four vice presidents of the company, and were two of the five highest paid employees. Their combined salaries totaled $319,000. The two remaining vice presidents were ages 41 and 51. Kimzey was age 60. CSC Logic did not hire replacements or specifically promote other employees to take the appellants' positions.

## II. DISCUSSION

A. Standard of Review.

This court reviews the grant of summary judgment *de novo.*[2] It may affirm the district court's grant of summary judgment on any ground raised to the district court and upon which both parties had the opportunity to present evidence.[3] Summary judgment is proper if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to summary judgment as a matter of law.[4]

B. The parties' evidentiary burdens:

---

[2]*Conkling v. Turner,* 18 F.3d 1285, 1295 (5th Cir.1994).

[3]*Id.* at 1296.

[4]Fed.R.Civ.P. 56(c).

4

The ADEA makes it unlawful for an employer to "discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."[5] The evidentiary burdens of each party in an ADEA case are well-established. A plaintiff must first present a *prima facie* case of employment discrimination.[6] If the plaintiff meets this burden, the employer must rebut the presumption of age discrimination by articulating a legitimate non-discriminatory reason for the adverse employment action.[7] If the employer presents such evidence, then the burden of production shifts back to the plaintiff to present probative evidence that the employer's stated reason was pretext.[8]

In the present case, the district court assumed for summary judgment purposes, that the appellants had established a *prima facie* case, and therefore analyzed evidence only on the issue of pretext. It found that Davis and Brown had not met their burden of production on this issue, and granted summary judgment. Davis and Brown argue that this ruling was in error, and that they each

---

[5]29 U.S.C. § 623(a)(1).

[6]*Bodenheimer v. PPG Industries, Inc.* 5 F.3d 955, 957 (5th Cir.1993); *Elliot v. Group Medical & Surgical Serv.,* 714 F.2d 556, 563 (5th Cir.1983), *cert. denied,* 467 U.S. 1215, 104 S.Ct. 2658, 81 L.Ed.2d 364 (1984).

[7]*Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253-54, 101 S.Ct. 1089, 1093-94, 67 L.Ed.2d 207 (1981); *Thornbrough v. Columbus & Greenville R.R. Co.,* 760 F.2d 633, 639 (5th Cir.1985).

[8]*Bodenheimer,* 5 F.3d at 957-58; *Thornbrough,* 760 F.2d at 639.

presented sufficient evidence of pretext to survive summary judgment.  CSC Logic maintains that Davis and Brown did not present sufficient evidence of pretext, and that they also did not even successfully present a *prima facie* case of age discrimination.  We will address each stage of the case in turn.

C. The *prima facie* case.

There are four elements to a *prima facie* case of employment discrimination under the ADEA.  The plaintiff must prove that:  1) he was discharged;  2) he was qualified for his position;  3) he was within the protected class;  and 4) he was replaced by someone outside the protected class, someone younger, or was otherwise discharged because of his age.[9]  The plaintiffs argue that a different standard should apply because this case represents a "reduction in force," making it impossible to prove they were "replaced" by someone younger or outside the protected class.[10]  We note, however, that the "reduction in force" standard applies only when a company lays off protected individuals, while retaining younger employees in *similar* positions.[11]  While CSC Logic did retain a number of younger employees after terminating Davis and Brown, these individuals were not in management positions similar to the plaintiffs'.  Both remaining vice-presidents were over

---

[9]*Bodenheimer,* 5 F.3d at 957;  *Elliot,* 714 F.2d at 563.

[10]*See, Thornbrough,* 760 F.2d at 642;  *Uffelman v. Lone Star Steel Co.,* 863 F.2d 404, (5th Cir.), *cert. denied,* 490 U.S. 1098, 109 S.Ct. 2448, 104 L.Ed.2d 1003 (1989);  *Williams v. General Motors Corp.,* 656 F.2d 120, 128 (5th Cir.1981), *cert. denied,* 455 U.S. 943, 102 S.Ct. 1439, 71 L.Ed.2d 655 (1982).

[11]*Id.*

6

forty, as was CEO Kimzey, who was older than either plaintiff. Thus, we will apply the standard evidentiary burden to the plaintiffs' cases.

This decision does not eliminate the possibility that the plaintiffs can prove a *prima facie* case. The elements of a basic *prima facie* case include the possibility that a plaintiff may not be able to show he or she was replaced by a younger employee. In such a case, the plaintiff may instead meet his burden by demonstrating that he "was otherwise discharged because of his age."[12] We now turn to the question of whether each plaintiff has met his initial burden.

1. Donald Brown

Appellant Brown easily satisfies the first three elements of his *prima facie* case. CSC Logic terminated him. He was forty-four at the time. And, it is undisputed that Brown was qualified for his position and performing satisfactorily. Brown's case falters, however, on the final element of a *prima facie* case.

Because Brown's position was eliminated, he cannot show that he was replaced by an individual outside the protected class, or by someone younger. Additionally Brown fails to offer sufficient evidence that otherwise indicates that he was discharged because of his age.

Brown insists that this element is satisfied by evidence that his duties were assumed by the younger Greg Shimkus. CSC Logic contends that Shimkus did not assume Brown's duties, but that the

_____

[12]*Bodenheimer, supra.*

7

older CEO Kimzey actually took over Brown's job.  Although it is clear that Shimkus took control from Brown of the VSI and the ISC, these events occurred more than sixteen months before Brown's termination, and thus do not bear on the decision to discharge him. In contrast, the evidence related to Shimkus's duties after Brown's termination is weak and speculative.

For example, Brown points to the fact that after Brown's departure, Shimkus began attending trade shows and conventions on behalf of the company.  Yet, Shimkus testified that he had been scheduled to attend a show before Brown's departure, but was forced to cancel.  Similarly, Brown cites evidence that Shimkus handled some contract negotiations for the company after Brown's termination.  Yet, Shimkus testified that he and others had performed marketing and sales functions before Brown's departure as well as afterwards.  Finally, Brown complains that before Brown's discharge, Kimzey consulted Shimkus about how Brown's departure would affect his duties.  To suggest that such a conference is proof that Shimkus took over Brown's position is a highly tenuous assertion.  There simply is not enough evidence tending to show that Shimkus effectively took over Brown's duties as Vice-President and Director of Marketing.  Brown's evidence is purely speculative and insufficient to establish a *prima facie* case of employment discrimination.

Brown also attempts to satisfy his burden with evidence that younger employees were more favorably treated at CSC Logic.  He notes that while the company froze his own and Davis's salaries, it

gave raises to younger employees and actually hired younger employees in the months prior to his termination. None of these younger employees were management staff, however, and there is no evidence that any officers received such favorable treatment at the expense of Brown and Davis. In fact, the evidence shows that all the vice-presidents had their salaries frozen, including those that were retained. To compare hiring decisions for officers with those for lower-level staff is not particularly probative, and does not create a *prima facie* case.

Finally, we look at age-related remarks allegedly made to Brown by CEO Kimzey. Such remarks may serve as sufficient evidence of age discrimination if the offered comments are: 1) age related; 2) proximate in time to the terminations; 3) made by an individual with authority over the employment decision at issue, and 4) related to the employment decision at issue.[13] Comments that are "vague and remote in time" are insufficient to establish discrimination.[14] In contrast, specific comments made over a lengthy period of time are sufficient.[15]

In this case, Brown offers only three allegedly discriminatory statements made by Kimzey to Brown. First, Kimzey noted that the staff was "getting long in the tooth." Second, in 1992, Kimzey

---

[13]*Turner v. North American Rubber, Inc.,* 979 F.2d 55, 59 (5th Cir.1992).

[14]*Guthrie v. Tifco Industries,* 941 F.2d 374 (5th Cir.1991), *cert. denied,* 503 U.S. 908, 112 S.Ct. 1267, 117 L.Ed.2d 495 (1992).

[15]*Fowler v. Carrollton Public Library,* 799 F.2d 976 (5th Cir.1986).

told Brown that he needed "hiring lessons; that you can hire a pretty one and teach them the job, but you can't hire an ugly one and make them pretty." Finally, Kimzey repeatedly told Brown that appellant Davis was old.

These comments do not show age discrimination towards Brown. None of these comments are directed to Brown, and the first two comments arguably do not even reflect age discrimination. Furthermore at least one of the remarks was made in 1992, sixteen months before Brown was actually terminated. Taken as a whole, the alleged age-related remarks made to Brown are too vague, indirect, and remote in time to support a finding of a discriminatory discharge. Because Brown has failed to present evidence sufficient to support a *prima facie* case, his case must be dismissed.

2. Robert Davis

Like Brown, appellant Davis meets the first three elements of a *prima facie* case. He was terminated from his position, was fifty-eight, and was performing satisfactorily at the time of his discharge. It is a much closer case, however, on whether Davis has satisfied the fourth element.

As with Brown, Davis's position was terminated, so he cannot show that he was replaced by a younger individual. Similarly, his evidence that younger, non-management employees received pay raises while his own salary remained the same is not relevant to the company's treatment of management officials. And, like Brown, Davis tries to show that his job responsibilities were effectively assumed by the younger Linda Long, but offers only speculative

10

evidence in support.[16]

Thus, we again look for proof of discriminatory discharge in the age-related comments allegedly made by Kimzey to Davis.  Davis alleges that Kimzey made at least four types of age-related remarks to him.  First, at the time of Davis's remarriage in 1991, Kimzey stated, "you don't need to be remarrying a young woman again;  you can't even get it up."  Second, on several occasions, Kimzey called Davis an "old goat."  Third, at a managers' meeting, when Davis was

---

[16]For example, Davis asserts that after his termination, Long traveled to California to present financial matters to the parent company, a duty that had traditionally belonged to Davis. Long's deposition also indicates, however, that Kimzey accompanied Long to California on these trips and that Long was only responsible for presenting the "numbers," while Kimzey was responsible for presenting the actual fiscal consequences of those numbers.

Davis also contends that Long assumed such duties as preparing financial reports, preparing budgets and financial plans, and contacting clients about their accounts.  Yet, there is no evidence that Long did not do such things before Davis's departure.  In fact, Long's deposition and affidavit indicate that with the exception of two incidental matters, she performed the same functions before Davis's departure as afterwards.

Davis also points to the fact that Long was promoted to "Director of Finance" after Davis's discharge.  Yet, Long did not receive a pay raise, or become a vice-president in connection with that promotion, and as discussed, there is no evidence that her job duties changed substantially.

Finally, Davis offers CSC Logic's letter to the EEC regarding Davis's termination.  That letter states that Davis's responsibilities would be assumed by existing staff "members," implying that CEO Kimzey did not assume all of Davis's duties.  Yet, this merely indicates that some of Davis's responsibilities may have been assumed by someone other than Kimzey.  It in no way proves that an individual other than Kimzey assumed a substantial portion of Davis's duties.  In short, Davis's conclusion that Long effectively assumed his position, is speculation, and is insufficient to meet his burden of proof.

11

unable to remember a number, Kimzey stated, "you just can't remember, you're getting too old." And finally, in connection with a work assignment, Kimzey allegedly asked Davis if "senility was setting in."

Unlike the comments made to Brown, all of these comments were directed at Davis, and were all clearly age-related. Further, all but the first comment were made near the time of Kimzey's termination. Finally, at least two of the comments imply that Kimzey believed Davis's age was affecting his job performance. In short, these alleged remarks are sufficiently troublesome to satisfy Davis's burden of proving a *prima facie* case.[17]

## D. Is there sufficient evidence of pretext?

Having found that appellant Davis successfully presented a *prima facie* case of age discrimination, we must next determine if CSC Logic's stated reason for the appellant's discharge was pretext.[18]

According to CSC Logic, it discharged Davis for economic reasons. In challenging this explanation as pretext, Davis does not dispute that CSC Logic was in a financial crisis. Instead, most of his evidence on this point merely questions whether terminating the plaintiffs was the best solution to the company's

---

[17]The evidence necessary to prove a *prima facie* case of employment discrimination may be limited if it "exudes that faint aroma of impropriety that is sufficient to justify requiring the [company] to give reasons for its decision." *Thornbrough,* 760 F.2d at 643-44.

[18]*Bodenheimer,* 5 F.3d at 957-58; *Thornbrough,* 760 F.2d at 639.

financial problems.

Specifically Davis cites the following evidence: 1) the appellants were the only two employees laid off in April 1993; 2) the total number of employees at CSC Logic increased in the two months after the appellants' terminations; 3) according to financial projections created by Davis prior to his termination, appellants were not members of departments with over staffing problems; 4) after CSC Logic learned that it would lose its largest client, the company gave across the board raises, (including many to younger employees) and hired many new employees (most of whom were younger than the appellants); 5) the appellants' duties were not substantially affected by the loss of the major client; and 6) just before his termination, Davis had created a budget with a profit margin three percent higher than that required by the parent company, yet Kimzey claimed that additional cutbacks were necessary.

All of this evidence merely questions the prudence of CSC Logic's methods of cost cutting. As such, it is not compelling, particularly in light of evidence to the contrary. For example, although Davis and Brown were the only employees laid off in April 1993, CSC Logic laid off seventy-two other employees between March and June 1993. Furthermore, although CSC Logic did hire new employees and give across the board raises in 1992, they were the result of an unexpected windfall received when Ford extended its business with the company through the end of 1992.

After the windfall passed, CSC Logic made significant cutbacks

13

in 1993, including: 1) renegotiating its office lease; 2) releasing excess office space; 3) eliminating contributions to employee insurance benefits reserve; 4) eliminating payments to the bad debt reserve; 5) reducing anticipated bonus payments; 6) eliminating expected salary increases; 7) reducing capital expenditures; 8) replacing leased printers; and 9) releasing 74 employees, including the appellants.

Although CSC Logic did hire some new employees in 1993, they were all in low-level positions. The company did not hire new management officers, or give raises to the existing management. Furthermore, the only evidence that CSC Logic hired employees in over-staffed departments or that there was no over-staffing in the appellants' departments comes from financial reports created by Davis himself. We are not surprised that when ordered to trim the budget, Davis did not find over-staffing in his own department. Additionally, arguing that there was no over-staffing in the financial department does not address the question of whether there was over-staffing in the executive ranks.

Similarly speculative is Davis's assertion that his duties were not substantially affected by the loss of the Ford account, and that he had created a budget with a high enough profit margin that further cutbacks were unnecessary. There is no precedent for requiring a financially strapped company to only make cutbacks in certain departments or in the specific manner suggested by the terminated plaintiff. In fact, Davis's plan suggested firing five or six employees, at a saving of only $200,000. By dismissing

14

Brown and Davis, CSC Logic was able to save over $300,000, while dismissing fewer individuals. Guesswork and speculation simply cannot serve as a basis for sending a case to a jury.[19]

We also note that Davis was hired at the age of 54, by the then 56 year old Kimzey. Davis was fired only four years later, also by Kimzey, who was then 60. This situation gives rise to an inference that age discrimination was not the motive behind Davis's termination. This "same actor" inference has been accepted by several other circuit courts, and we now express our approval.[20] The rationale behind this inference is best stated by the Fourth Circuit in *Proud v. Stone.*[21]

> " "[c]laims that employer animus exists in termination but not in hiring seem irrational.' From the standpoint of the putative discriminator, "[it hardly makes sense to hire workers from a group one dislikes (thereby incurring the psychological costs of associating with them), only to fire them once they are on the job.' "[22]

The fact that the actor involved in both employment decisions is

---

[19]*Amburgey v. Corhart Refractories Corp.,* 936 F.2d 805, 814 (5th Cir.1991); *Laurence v. Chevron, U.S.A., Inc.,* 885 F.2d 280, 285 (5th Cir.1989).

[20]*Buhrmaster v. Overnite Transp. Co.,* 61 F.3d 461, 463 (6th Cir.1995), *cert. denied,* --- U.S. ----, 116 S.Ct. 785, 133 L.Ed.2d 736 (1996); *Rand v. CF Industries, Inc.* 42 F.3d 1139, 1147 (7th Cir.1994); *LeBlanc v. Great American Ins. Co.,* 6 F.3d 836, 847 (1st Cir.1993); *Lowe v. J.B. Hunt Transport, Inc.,* 963 F.2d 173, 175 (8th Cir.1992); *Proud v. Stone,* 945 F.2d 796, 797-98 (4th Cir.1991).

[21]945 F.2d at 796.

[22]*Proud,* 945 F.2d at 797, *citing,* Donohue & Siegelman, *The Changing Nature of Employment Discrimination Litigation,* 43 Stan.L.Rev. 983, 1017 (1991).

also a member of the protected class only enhances the inference.[23] By expressing our approval of this inference, we do not rule out the possibility that an individual could prove a case of discrimination in a similar situation.[24] We hold only that the facts in this particular case are not sufficiently egregious to overcome the inference that CSC Logic's stated reason for discharging Davis was not pretext for age discrimination.[25] Because Davis has failed to meet his evidentiary burden on the issue of pretext, his case must be dismissed.

## III. CONCLUSION

For the reasons set forth above, we AFFIRM the district court's grant of summary judgment in favor of the defendant CSC Logic.

---

[23]*See LeBlanc,* 6 F.3d at 847.

[24]*See Proud,* 945 F.2d at 798.

[25]We additionally note that the outcome of this case is not effected by this court's recent *en banc* decision in *Rhodes v. Guiberson Oil Tools,* 75 F.3d 989 (5th Cir.1996). In that case, this court elaborated the legal standard necessary to prove pretext in an age discrimination case. In this case, however, the existence of the *Proud* presumption, coupled with the insufficiency of the evidence available to rebut that presumption, makes it unnecessary for this court to examine whether the evidence presented by Davis would satisfy the *Rhodes* standard in the absence of the *Proud* presumption.