IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 96-60875
_____


WINNIE FAYE GRUBBS,

                                    Plaintiff-Appellant,

                         versus

NORTH MISSISSIPPI MEDICAL
CENTER, INCORPORATED, ET AL.,

                                    Defendants,

PONTOTOC HEALTH SERVICES,
INCORPORATED; NORTH MISSISSIPPI
HEALTH SERVICES,

                                    Defendants-Appellees.

_____

Appeal from the United States District Court for the
           Northern District of Mississippi
                    (95-CV-87)
_____
                   March 17, 1998

Before GIBSON,[*] JOLLY, and EMILIO M. GARZA, Circuit Judges.

PER CURIAM:[**]

     Winnie Faye Grubbs worked for Pontotoc Health Services ("PHS")

and its parent corporation, North Mississippi Health Services

_____

     [*]Circuit Judge for the Eighth Circuit, sitting by designation.

     [**]Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

("NMHS"), as a licensed practical nurse ("LPN") until her employment ended in July 1994 because of a reduction in force. Grubbs filed suit against PHS and NMHS alleging that her employment was terminated and that she was not rehired because of illegal age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. The district court granted the defendants' motion for summary judgment and, finding no error, we affirm.

I

In this opinion, we will refer to the employer as NMHS. NMHS operates a small hospital and nursing home on the same grounds in Pontotoc, Mississippi. The two facilities share administrative services and common personnel/employment policies. Grubbs worked as a LPN at the hospital for over twenty years. During her tenure there, she gained extensive experience in several areas of practice and always received good performance ratings.

In June 1994, Fred Hood, the hospital's administrator, informed Mae Jackson, the hospital's Director of Nursing, that he planned to reduce the number of hospital beds from thirty-two to seventeen. The task then fell to Jackson to suggest appropriate staff adjustments. Jackson recommended reducing the current hospital staff of eight full-time LPNs and one part-time LPN to

2

four full-time LPNs by terminating the LPNs who were not certified to perform IV therapy.[1]

Four full-time hospital LPNs were IV certified as of July 1994: Brenda Franks (49), Peggy Lauderdale (52), Wanda Gann (53), and Miriam Smitherman (67). The remaining four full-time hospital LPNs and the part-time hospital LPN were not certified: Cindy Corley (22), Dora Day (49), Grubbs (58), Hazel Rakestraw (65), and Anita Hubbard (38).[2] On July 19, Jackson, who was 62, notified the non-certified LPNs of the decision to immediately eliminate their job positions. NMHS provided each LPN included in the RIF a thirty-day grace period of pay in lieu of notice.

---

[1]In 1992, Mississippi adopted a certification procedure that allowed certified LPNs to treat patients with intravenous ("IV") therapy. Before 1992, only registered nurses ("RNs") could perform such techniques. As a result of the state's amended regulations, NMHS' Education Department began offering IV therapy certification classes in Tupelo, Mississippi. The eligibility requirements for enrollment included a score of at least 90% on the anatomy and physiology portions of the State Nursing Exam and clinical experience for at least two of the last five years. NMHS' Education Department provided PHS a list of eligible LPNs and review kits for the ineligible LPNs.

Grubbs was initially ineligible to enroll due to her original score of 89.5% on the requisite portion of the State Exam. She obtained a review kit, however, retook the exam and scored sufficiently high to qualify for enrollment in 1993. Because of work schedules and other conflicts, Grubbs did not enroll until the August 1994 class. (Grubbs maintains that age discrimination also contributed to her later enrollment date. This issue is discussed infra.). Before her beginning class date, Grubbs was laid off from work.

[2]Hubbard was employed as a part-time LPN at the hospital before the RIF.

Of the five non-certified LPNs whose positions NMHS eliminated, the three younger women regained employment with NMHS before their thirty-day grace period had expired. Only Grubbs (58) and Rakestraw (65) were not reemployed. Grubbs filed a complaint with the EEOC alleging age discrimination and later filed this federal action under the ADEA. In due course, NMHS moved for summary judgment and the district court granted that motion. Grubbs now appeals.

## II

We first examine the district court's decision. In granting summary judgment, the district court addressed Grubbs's prima facie case as two separate issues: (1) the reduction of the workforce and (2) the rehire of the affected nurses.

After noting the ages of the four retained LPNs--Smitherman (67), Gann (53), Lauderdale (52), and Franks (49)--the district court questioned whether Grubbs had met her prima facie burden with respect to the reduction-in-force aspect of her lawsuit. The court noted that "[t]he age differences . . . arguably would not lead the fact finder reasonably to conclude that the defendants consciously refused to retain the plaintiff because of her age." Nevertheless, the court assumed that the plaintiff at least raised a genuine issue of material fact with respect to her prima facie case regarding her inclusion in the RIF.

4

Then, turning to the rehire issue, the court found it less troubling to identify evidence of the prima facie elements. The court relied primarily on the age differential between Grubbs and the rehired LPNs--Corley (22), Day (49), and Hubbard (38)--to infer that the defendants did not treat age neutrally in their decision to rehire. Thus, assuming that Grubbs had met her prima facie burden with respect to the workforce reduction issue and finding that she did so with respect to the rehire issue, the court then addressed the burden-shifting analysis under McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

The district court concluded that the undisputed evidence showed that the reduction in patient census in the early 1990s dictated a concomitant decrease of staff. Management considered different alternatives and determined that the IV certified LPNs should be retained and the non-IV certified positions eliminated. Grubbs, as a non-IV certified LPN fell into the latter category. With respect to rehire, the district court noted the defendants' undisputed assertion that the plaintiff failed to apply or even to inquire about any available positions. The district court therefore concluded that the defendants adequately had met their articulation burden and proceeded to address whether a genuine issue of material fact existed with regard to the ultimate question of discrimination.

The district court determined that Grubbs had failed to present a genuine issue of material fact as to her claim that PHS eliminated her job position because of her age. Comparing the ages of the LPNs who were retained with the ages of those included in the RIF, the court held that no reasonable juror could find that age motivated the defendants with respect to the reduction in force, especially when Grubbs had offered no other evidence on this issue. The district court further determined that the evidence was insufficient to avoid summary judgment with respect to Grubbs's rehire claim. The court acknowledged that NMHS had rehired or relocated the three younger LPNs in different positions within thirty days of their layoff. The court noted, however, that each of the three had submitted transfer slips, applications, or otherwise expressed an interest in remaining employed with NMHS; on the other hand, the court observed, Grubbs had done nothing to indicate an interest in rehire. Additionally, the court noted that at least two LPNs hired after the RIF were in their fifties,[3] further dispelling any inference of age bias on behalf of NMHS. The district court therefore held that there was no genuine material fact issue with respect to Grubbs's preferential rehire

---

[3]A ten-bed rehabilitation unit was opened in October 1995 in an existing wing of the PHS hospital. New hires were made to staff this facility. The LPN staff were not required to be IV certified at this unit.

claim and granted summary judgment to the defendants, dismissing the complaint.

## III

We review a district court's grant of summary judgment de novo, applying the same standard as would the district court. Melton v. Teachers Ins. & Annuity Ass'n of Am., 114 F.3d 557, 559 (5th Cir. 1997); Estate of Bonner v. United States, 84 F.3d 196 (5th Cir. 1996). Summary judgment is proper where the pleadings and summary judgment evidence present no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 321-22, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A factual dispute will preclude an award of summary judgment if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S.242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). When ruling on a motion for summary judgment, the inferences reasonably drawn from the underlying facts in the record must be viewed in the light most favorable to the nonmovant. Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587-88, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The court may not weigh the evidence nor make credibility determinations. Anderson, 477 U.S. at 255, 106 S.Ct. at 2511.

## IV

A

The ADEA prohibits an employer from discriminating against an individual with respect to hiring, discharge, "compensation, terms, conditions, or privileges of employment, <u>because of such individual's age</u>." 29 U.S.C. § 623 (a)(1) (emphasis added). We recite the production of proof in an ADEA case by rote. The plaintiff must first establish the existence of a prima facie case of discrimination. Once the prima facie case is established, an inference of discrimination arises. To rebut this presumption, the defendant employer must articulate a legitimate, nondiscriminatory reason for the subject action. The presumption of discrimination then disappears and the plaintiff must present probative evidence that age discrimination was the true motive of the employer. <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 506-08, 113 S.Ct. 2742, 2747-48, 125 L.Ed.2d 407 (1993); <u>Brown v. CSC Logic, Inc.</u>, 82 F.3d 651, 654 (5th Cir. 1996).

Generally, in order to demonstrate a prima facie case of age discrimination, a plaintiff must present credible evidence that: 1) her employment was terminated; 2) she was qualified for the position; 3) she was within the protected class at the time of the discharge; and 4) she was either i) replaced by someone outside the protected class; ii) replaced by someone younger, or iii) otherwise discharged because of her age. <u>Brown</u>, 82 F.3d at 654; <u>Nichols</u>, 81

8

F.3d at 41; <u>Rhodes v. Guiberson Oil Tools</u>, 75 F.3d 989, 992 (5th Cir. 1996) (en banc); <u>Meinecke v. H&R Block of Houston</u>, 66 F.3d 77, 84 (5th Cir. 1995); <u>Armendariz v. Pinkerton Tobacco Co.</u>, 58 F.3d 144, 149 (5th Cir. 1995); <u>Amburgey v. Corhart Refractories Corp.</u>, 936 F.2d 805, 812 (5th Cir. 1991); <u>cf.</u> <u>Uffelman v. Lone Star Steel Co.</u>, 863 F.2d 404, 407 (5th Cir. 1989). It is clear that Grubbs's employment was terminated, that she was within the protected age group, and that she was qualified for the position that she occupied. She was not replaced, however. Grubbs then, in order to establish her prima facie case, must present some credible evidence that she suffered an adverse employment decision because of her age. <u>O'Connor v. Consolidated Coin Caterers Corp.</u>, 517 U.S. 308, ___, 116 S.Ct. 1307, 1310, 134 L.Ed.2d 433 (1996). Grubbs's claim of discrimination initially arises from her selection in a reduction in the workforce. <u>Brown</u>, 82 F.3d at 654-55; <u>Armendariz</u>, 58 F.3d at 149-50. She also contends, however, that she was a victim of age discrimination in the rehire of the LPNs after the RIF. We will discuss separately these two issues, first addressing the reduction in force claim.

B

Getting to the bottom line quickly, our review of the record wholly fails to support any inference that the employer included Grubbs in the RIF because of her age. <u>See</u> <u>Hazen Paper Co. v.</u>

Biggins, 507 U.S. 604, 610, 113 S.Ct. 1701, 1706, 123 L.Ed.2d 338 (1993) (noting plaintiff must demonstrate that age "actually played a role in" and "had a determinative influence" in employer's decision). The retained hospital LPNs were ages 49, 52, 53, and 67. The terminated hospital LPNs were ages 22, 38, 49, 58, and 65. The average age of the retained LPNs was 55 while the average age of the LPNs included in the reduction in force was 46. These statistics from such a small sampling do not alone exonerate the employer; however, they clearly are more supportive of the employers' defense than supportive of Grubbs's discrimination claims. See Amburgey, 936 F.2d at 813 (noting that while not dispositive, evidence that majority of retained employees were in protected age group is probative of age discrimination issue).

Furthermore, it is undisputed that the patient census at PHS had declined and, accordingly, that the reduction in LPNs was justified. Grubbs does not challenge management's decision to reduce the staff according to IV certification status;[4] nor has she provided any credible evidence demonstrating that this criterion was applied discriminatorily in the selection of those chosen for lay-off. Indeed, the evidence is undisputed that none of the non-IV certified full-time hospital LPN positions remained after the

---

[4]Grubbs maintains that NMHS discriminated against her on the basis of her age by delaying her training for IV certification. The record reflects no evidence that substantiates such a claim.

RIF. Finally, Grubbs has produced no evidence of animus toward older nurses on the part of any decision maker involved in the RIF.

In sum, Grubbs has failed to provide evidence of any kind to suggest that she was unlawfully selected as part of the RIF because of her age. Rhodes, 75 F.3d at 994 ("[A] disparate treatment claim cannot succeed unless the employee's protected trait actually played a role in . . . [the employer's decisionmaking process] and had a determinative influence on the outcome.") (quoting Hazen Paper Co., 507 U.S. at 610, 113 S.Ct. at 1706, 123 L.Ed.2d 338 (1993)). The district court's grant of summary judgment in favor of PHS and NMHS against Grubbs with respect to the RIF was, in all respects, proper.

C

We now turn our focus to the second issue in this case-- Grubbs's allegation that PHS discriminated against her by failing to rehire her after her inclusion in the RIF. NMHS rehired Corley (22), Hubbard (38), and Day (49) in new positions, but did not rehire either Grubbs (58) or Rakestraw (65). Grubbs maintains that she has demonstrated a prima facie case of age discrimination for failure to rehire because she was qualified for the available positions and the employer hired similarly situated younger LPNs. NMHS responds that it rehired the younger LPNs because those nurses applied for the open positions. Grubbs, on the other hand, neither

11

inquired about nor applied for any position, but instead indicated that she had no interest in alternative employment with NMHS. Grubbs counters that these proffered reasons are a pretext for discrimination because NMHS informed the three younger LPNs of the open positions at PHS, but failed to so inform Grubbs. We therefore turn to examine whether the employer's stated reason for not rehiring Grubbs was a pretext for age discrimination.

We start with the premise that the record reflects no policy or practice of the employer that obligated it to transfer, recall, or otherwise rehire Grubbs or any other laid off employee included in the RIF. Nor does the record reflect any established policy or practice pursuant to which the other younger nurses were rehired, except that each let it be known that they wished to be rehired.

The record evidence, reviewed in the light most favorable to Grubbs, shows the following: NMHS posted a notice of open positions at the nursing home and hospital the day before the LPNs were notified that they were included in the RIF.[5] Upon her termination, Jackson told Corley that she could inquire of Marie Barnes for other openings at NMHS facilities. Corley did so and Barnes told her of an available LPN position at the nursing home

---

[5]These included a full-time LPN position in the nursing home and an on-call LPN position in the hospital. The on-call position specified IV certification. Nursing home LPNs were not required to be IV certified. All hospital LPNs were required to participate in the certification program as soon as their schedules allowed.

12

and one at the Tupelo facility.  Corley testified that she had also learned of the nursing home position from the posted notice.[6]  She applied for both positions, obtained the nursing home position, and began work two or three days later.

Day testified that Jackson "may" have told her about the open Tupelo positions, but she could not clearly recall.  No one in management, however, informed her of any openings at PHS at that time.  She heard "through the grapevine" soon after her termination that one of the nurses was leaving the nursing home and that a position would thus be available.  She applied for that job, but was passed over because of Corley's seniority.  When Corley was hired at the nursing home, Day inquired of other available positions.  The record is clear that Day "expressed an interest in the part-time or relief position in the acute care and she . . . was referred back to Mae Jackson."  A couple weeks later, Jackson called and offered Day the part-time position.  Day accepted and worked part-time at the hospital until she obtained a full time position at the nursing home in October.

Similarly, Hubbard applied to fill the position of the posted on-call hospital LPN and ultimately obtained that job.  Grubbs argues that NMHS discriminated against her by offering Hubbard the

---

[6]Jackson did not inform Corley of any available positions, and Barnes tendered no information to Corley until Corley inquired of Barnes and expressed her interest in continued employment.

13

on-call position "on the spot." The record, however, supports only that Hubbard was told she was terminated and that she could apply for the on-call position if she desired. This on-call position was one of the positions that had been posted previous to the RIF.[7]

Thus, there is no genuine issue of material fact with respect to the assertion of NMHS that each of the three LPNs who were rehired submitted transfer requests or applications and otherwise displayed an interest in reemployment within the NMHS family. Grubbs had at least constructive knowledge of the two available positions at the PHS facilities; yet, she did nothing to show an interest in either of those jobs. Furthermore, she presents no evidence disputing that she could have obtained information of the other available positions from any number of convenient sources, including inquiring of Jackson or Barnes; yet, again, she did nothing. Indeed, when initially told that she was included in the RIF, Grubbs immediately threatened to contact an attorney and acted in a manner hostile toward further employment with NMHS. In sum, the record does not reflect that the employer ever denied Grubbs's request or application for rehire.

As we have earlier noted, the employer was under no duty to rehire Grubbs; it was only under a duty not to discriminate against

---

[7]The on-call position was posted as an IV certified position. Hubbard was hired with the understanding that she would obtain certification as soon as her schedule permitted.

14

her.  Although NMHS did not affirmatively inform Grubbs of available positions, there is no evidence that its failure to do so was motivated by an unlawful animus based on age.[8]  NMHS took no steps to conceal the information about available positions, which was easily accessible to Grubbs.  The simple matter is that the rehired LPNs expressed an interest in continued employment with NMHS and took the necessary action to ensure that they were rehired; Grubbs did not.  We therefore must conclude that Grubbs failed to show that the employer's stated reason for its failure to rehire her--that she failed to apply for, or otherwise indicate an interest in, rehire--was a pretext for age discrimination.  Summary judgment was therefore proper as against Grubbs's failure to rehire claim.[9]

---

[8]Grubbs attributes the majority of the discriminatory action and intent on behalf of NMHS to Jackson.  Mae Jackson was about 61--three years older than Grubbs.  Although certainly not dispositive, that the decision-maker is also a member of the protected class may reasonably lend itself to an inference of nondiscrimination.  Brown, 82 F.3d at 658 (citing LeBlanc v. Great American Ins. Co., 6 F.3d 836, 847 (1st Cir. 1993)).

[9]As a final argument, Grubbs maintains that PHS and NMHS violated their own termination policy when they offered positions to the three younger LPNs over Grubbs and that this violation is evidence of age-based discrimination.  The hospital's employee handbook provides:

> The term [lay-off] refers to termination of employment by the hospital because of lack of work.  Final notice, (or pay in lieu of notice), will be for the same number of weeks required of the employee as explained in the policy on resignation.  Layoffs will be based on length of continuous service and job performance.  Persons with

15

V

For the foregoing reasons, the district court's award of summary judgment to PHS and NMHS on the merits of the claim brought by Grubbs is

A F F I R M E D.

---

good work records will be eligible for recall.
This policy provides only for <u>eligibility</u> for recall. Nothing in the policy establishes a system obligating recall, especially when the job previously held was eliminated. Here, there simply is no evidence that NMHS considered her ineligible for rehire. In the absence of some indication from Grubbs that she wished to be rehired, NMHS was never called upon to make a decision as to her "eligibility."