IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 99-30649
Summary Calendar
_____

WAYNE ROBIDEAUX,

Plaintiff-Appellant,

versus

ISB FINANCIAL CORP.; IBERIABANK,

Defendants-Appellees.

--------------------
Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 98-CV-751
--------------------
June 26, 2000

Before HIGGINBOTHAM, DeMOSS, and STEWART, Circuit Judges.

PER CURIAM:[*]

Wayne Robideaux appeals the district court's grant of
summary judgment for the defendants in his action for damages
under the Age Discrimination in Employment Act (ADEA), 29 U.S.C.
§ 621, *et seq.*; the Family and Medical Leave Act (FMLA), 29
U.S.C. § 2601 *et seq.*; and the Employee Retirement Income
Security Act (ERISA), 29 U.S.C. § 1001, *et seq.*

Robideaux argues on appeal that the district court's finding
that he had suffered no adverse employment action was clearly
erroneous as a matter of law. He contends that the evidence

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

showed that he had been demoted, that his major responsibilities had been taken away and assigned to younger executives, and that he was denied a pay increase in 1997 prior to being discharged. He argues that the Bank's severance proposal established a prima facie case of age discrimination as a constrictive discharge because each choice facing him made him worse off than before the discrimination occurred. He argues that the evidence showed that the Bank's purported reasons for demoting him, taking away his responsibilities, denying him a pay increase, and ultimately asking for severance were false and a pretext for discrimination. He argues that the district court erred in relying on the stray remarks doctrine because there was direct evidence of discrimination. He argues that the Bank's purported reasons included prohibited factors, such as his health condition.

Assuming for argument's sake that Robideaux did establish a prima facie case by virtue of the alleged adverse employment actions and the offer of the severance package, Robideaux has not produced evidence to show that the defendants' reasons for the employment decisions, reorganization and a critical performance appraisal, were a pretext for age discrimination. The alleged age-related comments cited to by Robideaux as direct evidence of discrimination are nothing more than stray remarks. Brown v. CSC Logic, Inc., 82 F.3d 651, 655 (1996). Larrey Mouton explained that the personnel changes which occurred were in response to the changes in the size and scope of the bank. As Robideaux himself points out, even Ronnie Foret's duties, which had initially been expanded, had to be further divided among other management people

as the bank continued to grow. This fact supports the defendants' explanation for the changes in Robideaux's responsibilities and weighs against a finding of age discrimination.

Another factor weighing against a finding of age discrimination is the fact that Mouton, himself aged 51 at the time, hired Robideaux at age 56. When the same actor hires and fires an employee, it creates an inference that age discrimination was not the motivation behind the termination. Brown, 82 F.3d at 658. The fact that the actor involved in both employment decisions is also a member of the protected class serves to enhance the inference. Id.

The facts Robideaux points to as evidence of age discrimination are not sufficient to overcome the evidence produced by the defendants that there were legitimate business reasons for the actions taken in connection with Robideaux's employment.

Robideaux contends that the evidence showed that the Bank's purported reasons for the adverse action included the prohibited factor of his health condition, specifically, prostate disease, for which he had taken leave to be treated in September through November 1997. He contends that this was the only event which occurred that fall which could have prompted Mouton's decision to offer the severance package. Robideaux does not specifically make any argument about FMLA retaliation. To the extent that he is arguing his FMLA claim separately from his ADEA claim, his FMLA claim fails for the same reasons as his ADEA claim.

Robideaux has not offered any evidence showing a connection between his use of leave and the decision to offer him a severance package.  <u>Chaffin v. Carter Co., Inc.</u>, 179 F.3d 316, 319 (5th Cir. 1999).

Robideaux argues that the district court erred in finding that he was not entitled to accelerated vesting of stock options upon his "involuntary" early retirement under the bank's Incentive Stock Option Plan (ISOP) and Management Recognition and Retention Plan (MRRP) plans.  Robideaux argues that he is entitled to 100% of the shares in both the ISOP and MRRP.  His contention rests on the proposition that both plans specify normal retirement age as 65 or "such earlier age as may be specified in applicable plans or policies of the Corporation."  His evidence that there was an "applicable plan or policy" whereby employees could retire before age 65 is: (1) the Bank's 401(k) plan allowed for retirement earlier than age 65; and (2) the Bank offered four other employees "early" retirement before age 65.

Robideaux does not cite any provision in any plan, 401(k), ISOP or MRRP, which provides for a normal retirement age other than 65.  All applicable retirement plans clearly state that the normal retirement age is 65.  Robideaux contends that the Bank maintained a policy of allowing persons to retire before age 65 because four employees were allegedly allowed to retire with full 401(k) and severance benefits in 1994.  These individuals were separated from the Bank as part of a reduction-in-force after a reorganization in 1994.  Any 401(k) benefits received by these

individuals was pursuant to the vesting schedule included in the 401(k) plan in effect in 1994. The 401(k) plan was amended in 1995 and again in 1997 and provided for retirement at age 65 when Robideaux left the Bank's employ in 1998.

Robideaux refers to a provision in the 401(k) plan authorizing "disability retirement" at an earlier age. However, Robideaux has not asserted that he was denied disability benefits pursuant to the 401(k) plan.

Robideaux does not cite any evidence to support his claim that in January 1998, there was a Bank policy or plan which permitted retirement before age 65. Because Robideaux had not reached age 65 by the time he left the Bank's employ, his shares in the ISOP and MRRP were forfeited.

Robideaux argues that under the provisions of a February 1995 severance agreement, he was entitled to two years' pay and two years' benefits under all employee benefit plans due to a "change in control" of the corporation. Robideaux contends that there was a "change in control" of the Bank because it was converted from a mutual savings bank to a stock company, effective April 6, 1995, which change was reported to the SEC.

The severance agreement was entered into among ISB Financial Corporation (the "Corporation"), Iberia Savings Bank (the "Savings Bank"), collectively referred to as the "Employers," and Robideaux (the "Executive"). Robideaux signed the severance agreement on February 15, 1995, which provided that "[i]f the Executive's employment by the Employers shall be terminated subsequent to a Change in Control of the Corporation by (i) the

Employers other than for Cause, Disability, Retirement, or as a result of the Executive's death, or (ii) the Executive for Good Reason" he shall be entitled to two years' salary and benefits.

The severance agreement is an employee benefit plan governed by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§1001 et seq.; see Collins v. Ralston Purina Co., 147 F.3d 592 (7th Cir. 1998) (change in control severance agreement was ERISA plan). The agreement does not contain a provision allowing an administrator discretionary authority to determine eligibility for benefits or to interpret the terms of the plan. Accordingly, we construe the terms of the plan de novo. Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); Wegner v. Standard Ins. Co., 129 F.3d 814, 818 (5th Cir. 1997).

Robideaux does not present any facts to prove that a "change in control" within the meaning of the agreement occurred. He refers to the consolidated financial statement which is contained in form 10Q (a June 1995 quarterly report) and which explains that a stock conversion resulted in an increase in paid in capital. This report notes that Iberia Savings Bank converted from a state chartered mutual savings bank to a state chartered stock savings bank and the ISB Financial Corporation acquired all of the common stock of the Bank. This indicates a change in the "Bank" not the "Corporation."

Robideaux has not submitted any evidence of a "change in control" of the corporation as defined in the severance agreement. Because no "change in control" of the corporation

occurred, Robideaux is not entitled to any benefits pursuant to the 1995 severance agreement.

Robideaux argues that the defendants breached their fiduciary duty by refusing payment of vested plan benefits under the ISOP, MRRP, and the 1995 severance agreement. As discussed above, Robideaux was not entitled to any benefits under the severance agreement because no "change in control" of the corporation occurred. He was not entitled to benefits under the ISOP or MRRP because he had not reached the normal retirement age of 65. The fact that Robideaux has not been denied any benefits for which he was eligible precludes his claim that the defendants failed to administer the plans in his interest.

AFFIRMED.