# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 16-60533
Summary Calendar

United States Court of Appeals
Fif h Circuit

**FILED**

March 30, 2017

Lyle W. Cayce
Clerk

JACK S. CHESTER,

       Plaintiff - Appellant

v.

DIRECTV, L.L.C.,

       Defendant - Appellee

Appeal from the United States District Court
Southern District of Mississippi
USDC No. 3:13-CV-111

Before STEWART, Chief Judge, and CLEMENT and SOUTHWICK, Circuit Judges.

PER CURIAM:*

       Plaintiff-Appellant Jack Chester appeals the district court's summary judgment in favor of Defendant-Appellee DIRECTV, L.L.C. ("Directv"). For the following reasons, we affirm.

## I. Facts & Procedural History

       From 2003 through 2008, Chester worked as an installer and technician for a company in Mississippi named Bruister and Associates, Inc. ("Bruister").

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-60533

In 2008, Bruister was acquired by Directv. After the acquisition, Directv hired Chester and a year later promoted him to the position of field supervisor. As field supervisor, Chester was responsible for supervising a team of installers and technicians and was required to ensure that the team maintained certain target numbers associated with performance and service.

In April 2011, Directv conducted an annual site survey that revealed that the Jackson office, where Chester was employed, had scored below several other sites. One measurement of performance Directv uses is called Service on Service ("SOS"). SOS refers to repeat service following an installation or repair within a certain timeframe. SOS is measured in 30, 60, and 90-day increments. SOS targets are 1% or below for 30 days, 1.5% or below for 60 days, and 2% or below for 90 days. The concept behind the SOS target metrics is that customers will be less satisfied if they are required to make repeated calls after receiving initial service or repair for a given problem.

Because Chester's numbers exceeded the target percentages, he received a disciplinary write-up in March 2012. Additional reasons for the write-up included Chester's team's failure to meet "standards for completion rate, new install completion rate, and quality assurance percentages." In April 2012, another site survey was conducted that again revealed substandard performance rates by Chester's team. As a result, Directv's Regional Vice President Tim Cole met with four field supervisors, including Chester, and Chester's direct supervisor, branch manager Lee Branning. Cole expressed his dissatisfaction with the off-target percentages and gave Chester and the other field supervisors 30 days to make improvements.

A few months later, Chester "wrote up" an office administrator after the two had a disagreement about equipment needed for repairs. Soon thereafter, Branning and Mike McKelvaine of Human Resources called Chester and explained that he did not have the authority to issue a write-up on the office

2

administrator. Chester was then issued a write-up because his correspondence regarding the office administrator was deemed unprofessional. The write-up also included a reference to Chester's continued failure to meet Directv's target percentages relating to performance.[1]  Chester was informed that this was his "final warning."

In late 2012, Chester and the other field supervisors again met with Branning and McKelvaine, as well as Chuck Tomlinson, another member of upper management, to discuss performance and productivity rates. During these meetings, each field supervisor met individually with the management team. During Chester's meeting, he was questioned about his technicians' performance, including the best and worst performers that he supervised. According to Directv, Chester incorrectly answered several inquiries, revealing that he was unaware as to who performed the best and the worst on the team he supervised.  Consequently, the management team determined that Chester's previous receipt of discipline, write-ups, and warnings, his continued substandard performance rates, and his lack of knowledge about his own team warranted his termination from the company.

Following his termination in September 2012, Chester filed a complaint with the Equal Employment Opportunity Commission and later filed suit in federal court. In the district court proceedings, Chester alleged claims of age discrimination against Directv arguing that, although he was purportedly fired due to his off-target performance rates and disciplinary history, the other younger field supervisors who had similarly failed to meet the target SOS rates and received discipline were not fired.[2]  In response, Directv argued that

---

[1] Chester's team's SOS numbers at this time were: (1) 2.6% for 30 days (target was 1% or below); (2) 4.7% for 60 days (target was 1.5% or below); and (3) 6.6% for 90 days (target was 2% or below).

[2] When Chester was terminated, he was 59 years old.  At the time, one of the other three field supervisors was 43-years-old and two were under the age of 40.

No. 16-60533

Chester was fired due to his continued failure to meet target SOS rates after receiving several warnings, his previous receipt of discipline, and his lack of knowledge about the performance of the technicians he supervised—not because his age. Directv filed a motion for summary judgment on grounds that Chester had failed to establish a prima facie case of age discrimination. The district court rendered summary judgment in favor of Directv holding that Chester had failed to establish that his age was the "but-for" cause of his termination.

In its reasons for judgment the district court noted Chester's record of substandard performance within the company and the multiple warnings he received prior to his termination, his unprofessional conduct toward the office administrator, his failure to provide evidence that he gave accurate answers regarding his technicians' performance rates during his final meeting with upper management, and Directv's subsequent firing of one of the younger field supervisors a few months after Chester's termination. The district court also referenced the fact that Directv hired Chester at the age of 56 and promoted him a year later, after the company acquired Bruister, suggesting that his age was not a factor in their consideration of whether to employ him. Chester filed this appeal.

## II. Standard of Review

"We review a district court's grant of summary judgment de novo, applying the same standards as the district court." *Hagen v. Aetna Ins. Co.*, 808 F.3d 1022, 1026 (5th Cir. 2015). Summary judgment is appropriate if the record evidence shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Robinson v. Orient Marine Co.*, 505 F.3d 364, 366 (5th Cir. 2007). "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *See*

No. 16-60533

*Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003). "[R]easonable inferences are to be drawn in favor of the non-moving party." *Robinson*, 505 F.3d at 366. "A panel may 'affirm summary judgment on any ground supported by the record, even if it is different from that relied on by the district court.'" *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 438 (5th Cir. 2012).

### III. Discussion

On appeal, Chester argues that the district court erred in holding that he failed to provide evidence of age discrimination. Chester avers that "he can show pretext and that [Directv] has not offered a legitimate non-discriminatory reason for terminating [him]." We disagree.

"Under the Age Discrimination in Employment Act (ADEA), an employer may not 'discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.'" *Phillips v. Leggett & Platt, Inc.*, 658 F.3d 452, 455 (5th Cir. 2011) (quoting 29 U.S.C. § 623(a)(1)). To establish a prima facie case of age discrimination under the ADEA, a plaintiff must show that he was: (1) terminated; (2) qualified for the position from which he was terminated; (3) within the protected age group at the time of termination; and (4) replaced by someone younger or outside the protected class, or otherwise discharged because of his age. *Phillips*, 658 F.3d at 455. To ultimately succeed on a claim of age discrimination, "[a] plaintiff must prove by a preponderance of the evidence. . . that age was the 'but-for' cause of the challenged employer decision." *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010).

In the proceedings below, the district court noted that neither party disputed that Chester had proven the first three of the four elements required to establish a prima facie case of age discrimination under the ADEA, *i.e.*, he was terminated, he was qualified for the position from which he was

terminated, and he was within a protected age group at the time of termination. *See Phillips*, 658 F.3d at 455. The parties are in dispute, however, as to whether Chester has shown the fourth element—that he was replaced by someone younger or outside of the protected class or, alternatively, that he was otherwise discharged because of his age. *Id.*

Chester advances on appeal that he proved the final element of his prima facie case by providing evidence that the younger field supervisors had similar off-target SOS rates and disciplinary histories but were not fired like he was; he does not claim that he was replaced by a younger employee. Our review of the record reveals that, although some of the other field supervisors did receive write-ups for off-target SOS rates and performance deficiencies, there is no evidence that any of the other supervisors received disciplinary action for unprofessional conduct similar to that of Chester's toward the office administrator. Further, there is no evidence that any other field supervisor incorrectly answered questions regarding the performance levels of the technicians that he supervised like Chester allegedly did during his interview with upper management. So although it may be true that the other field supervisors had off-target SOS scores like Chester, a more reasonable reading of the evidence suggests that the combination of Chester's continued substandard work performance, worsening SOS rates after multiple warnings, his documented unprofessional conduct, his receipt of discipline, and his demonstrated lack of knowledge about the technicians he supervised resulted in his being assessed with an overall worse job performance than the other supervisors. Moreover, as the district court pointed out, one of the other "younger" field supervisors was fired a few months after Chester due to his failure to improve his SOS scores, again suggesting that Directv based its decision to terminate Chester—and the younger supervisor—on their poor job performances rather than their ages. All of these details indicate that

Chester's age was not a factor, much less a deciding factor, in Directv's decision to fire him.

Citing *Mayberry v. Vought Aircraft Company*, Chester argues in the alternative that he did not commit the alleged violation for which he was terminated, *i.e.*, he did not incorrectly answer the questions about the performance rates of the technicians he supervised during his meeting with upper management. *See Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995) (providing that "a prima facie case may be established by showing that the plaintiff did not violate the work-rule for which he was disciplined."). This argument also fails. As the district court reasoned, Chester failed to present any specific evidence that he accurately answered the questions regarding his team's performance. Rather, he simply stated that he answered the questions correctly. He could not, however, provide the district court with the accurate information he claims to have provided during the meeting or that he would present at trial if given the opportunity. Additionally, in the event that he did give the correct answers but was misunderstood at the meeting, there is no evidence that Chester made an effort to correct any perceived miscommunications with the management team at any time. Perhaps even more significantly, Chester had been given a "final warning" several months prior to being questioned about the performance of his individual technicians, but his SOS rates continued to worsen. This suggests that, even if it is somehow debatable that Chester gave inaccurate answers at the meeting, his worsening field performance after his final warning combined with his disciplinary history and unprofessional conduct toward the office administrator, would have nevertheless resulted in his termination.

In conclusion, we see no error in the district court's holding that Chester failed to demonstrate a genuine issue of material fact by presenting either

No. 16-60533

direct or circumstantial evidence that he was terminated from Directv due to his age. *See* Fed. R. Civ. P. 56(a); *Robinson*, 505 F.3d at 366. Consequently, he has failed to establish a prima facie case of age discrimination under the ADEA and the district court properly rendered summary judgment in favor of Directv. *See Phillips*, 658 F.3d at 455.[3]

## IV. Conclusion

For the aforementioned reasons, the district court's summary judgment in favor of Defendant-Appellee Directv is AFFIRMED.

---

[3] Chester devotes a significant portion of his appellate and reply briefs to the district court's limited mention of the fact that Directv hired Chester at the age of 56 and promoted him a year later, pointing to Directv's citation of "Fifth Circuit precedent that states that it is irrational for an employer to show animus in termination but not in hiring." *See Brown v. CSC Logic, Inc.*, 82 F.3d 651, 658 (5th Cir. 1996). Chester argues that this "same actor inference argument" is unsupported by the facts and contradicts the requirement that "all reasonable inferences are to be drawn in favor of the non-moving party." *Robinson*, 505 F.3d at 366. Assuming *arguendo* that the "same actor inference" was somehow improperly applied by the district court here, the record contains ample evidence supporting the district court's conclusion that Chester failed to establish a prima facie case of age discrimination under the ADEA by showing that he was terminated due to his age, *see Phillips*, 658 F.3d at 455, and as previously stated *infra*, we may properly "affirm summary judgment on any ground supported by the record, even if it is different from that relied on by the district court." *Reed*, 701 F.3d at 438.