# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 14-60129
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**
November 17, 2014

Lyle W. Cayce
Clerk

DR. YUL CHU,

> Plaintiff−Appellant

versus

MISSISSIPPI STATE UNIVERSITY;
BOARD OF TRUSTEES, INSTITUTIONS OF HIGHER LEARNING;
DR. ROBERT H. "DOC" FOGELSONG, Individually and Officially;
DR. D. E. MAGEE, JR., Individually and Officially;
DR. THOMAS C. MEREDITH, Commissioner, Individually and Officially,

> Defendants−Appellees

---

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 1:08-CV-232

---

Before SMITH, WIENER, and ELROD, Circuit Judges.

JERRY E. SMITH, Circuit Judge:*

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-60129

Yul Chu appeals a summary judgment dismissing his claims of race-based employment discrimination, constitutional violations, and breach of contract. On appeal, he challenges only part of the judgment: (1) the dismissal of his Title VII claims against Mississippi State University ("MSU") and the Board of Trustees, Institutions of Higher Learning (the "Board"), and (2) the dismissal of his 42 U.S.C. § 1983 claims against the individual defendants—Robert "Doc" Fogelsong, D.E. Magee, Jr., and Thomas Meredith, personally and in their official capacities[1]—for due-process and equal-protection violations. Agreeing with the district court that Chu has failed to present sufficient evidence of unlawful discrimination or to allege constitutional violations, we affirm.

I.

A.

To receive tenure at MSU, a professor must both meet the university's eligibility requirements and pass its review process. Requirements to apply for tenure are set out in the university's policies and procedures: First, the candidate must be in a tenure-track position. Second, he must complete a five-to-six-year probationary period. Finally, he must demonstrate satisfactory performance in teaching, research, and service and must excel in at least one of those areas. For monitoring of his progress, he receives annual performance reviews during the probationary period.

Once a candidate believes he is eligible, the candidate submits an application and supporting documents for a multilayered review process. First, a committee made up entirely of tenured members from his department reviews

---

[1] Fogelsong was president of MSU, Magee was trustee of the Board, and Meredith was commissioner of the Board at the time Chu's application for tenure was denied.

the application and makes a recommendation for or against tenure. The candidate's department head, the college's tenure and promotion committee, and the college's dean then complete similar independent reviews and recommendations. Next, the university's provost looks at the respective reviews and recommendations and in turn makes a recommendation to MSU's president, who then decides whether to recommend tenure to the Board.

If the president recommends tenure, the issue is submitted to the Board for approval. If the president declines to recommend tenure, the candidate can appeal to the tenure and promotion committee and the provost for investigation, and the application will be reevaluated and submitted to the president again for reconsideration. If the president again declines to recommend tenure, the candidate may appeal directly to the Board, which decides whether to consider the appeal. Once the university's tenure denial is final, the candidate receives a nonrenewable, one-year contract that ends his employment at MSU.

## B.

MSU and the Board hired Chu, a native of South Korea, in 2001 as a tenure-track assistant professor in the electrical and computer engineering department. After working under a series of one-year contracts, he submitted a tenure application in 2006. Following university procedures, the application was reviewed by a departmental committee, the head of Chu's department, the college's tenure and promotion committee, the college dean, and the university provost. Each recommended against granting tenure to Chu, and MSU's president declined to recommend Chu to the Board for tenure.

Chu appealed, and the tenure and promotion committee reconsidered the application with further investigation. The committee did not change its recommendation, and the provost and president again declined to recommend Chu, who appealed directly to the Board, which declined to hold a hearing on

No. 14-60129

the application.  After the denial, Chu signed a final one-year contract for the 2007–2008 school year.

Once he received a right-to-sue letter from the EEOC, Chu sued MSU, the Board, Fogelsong, Magee, and Meredith, personally and officially, for employment discrimination under Title VII.  He also sued for constitutional violations under § 1983 and for breach of contract under state law.

Defendants moved to dismiss all of Chu's claims except for the Title VII claim against MSU and the Board.  The district court converted the motion to one for summary judgment and ruled for the defendants, dismissing Chu's other claims in October 2012.  After further discovery, MSU and the Board moved for summary judgment on the remaining Title VII claims. The court granted summary judgment and dismissed those claims in January 2014.

Chu filed a notice of appeal as to both orders, but his subsequent briefing challenges only two aspects of the dismissals.  First, he appeals the January 2014 order dismissing his Title VII claims against MSU and the Board.  Second, he appeals the dismissal of his § 1983 claims against Fogelsong, Magee, and Meredith personally and in their official capacities for violations of due process and equal protection.  As discussed below, Chu waived any appeal of the Title VII claims against the individual defendants, the § 1983 claims against MSU and the Board, and the breach-of-contract claims.

II.

We review a summary judgment *de novo*.  *Autry v. Fort Bend Indep. Sch. Dist.*, 704 F.3d 344, 346 (5th Cir. 2013).  Summary judgment is appropriate where the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2]  Where facts

---

[2] FED. R. CIV. P. 56(a); *see also Vuncannon v. United States*, 711 F.3d 536, 538 (5th

No. 14-60129

are disputed, this court must view the facts in the light most favorable to the nonmovant, and we draw reasonable inferences in the nonmovant's favor. *See Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007). But a party opposing summary judgment may not manufacture a genuine dispute of fact through conclusory statements, unsupported allegations, or a mere iota of evidence. *Id.*

## III.

Title VII makes it unlawful for a covered employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Tenure falls within the ambit of employment decisions covered by Title VII. *Tanik v. S. Methodist Univ.*, 116 F.3d 775, 776 (5th Cir. 1997) (per curiam).

A case under Title VII can be proven either by direct evidence or by circumstantial evidence under the *McDonnell Douglas* framework.[3]   In his pleadings and briefs, Chu contends that there is both direct and circumstantial evidence of discrimination on the basis of race and national origin.

### A.

Where there is direct evidence of a discriminatory basis or motivation for an adverse employment action, the *McDonnell Douglas* framework does not apply.[4] "Direct evidence is evidence which, if believed, proves the fact without

---

Cir. 2013).

[3] *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

[4] *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 992 (5th Cir. 2005); *see also Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985).

inference or presumption." *Jones*, 427 F.3d at 992. It includes "any statement or document which shows on its face that an improper criterion served as a basis—not necessarily the sole basis, but a basis—for the adverse employment action."[5] If a plaintiff provides direct evidence, the burden shifts to the employer "to prove by a preponderance of the evidence that the same decision would have been made regardless of the discriminatory animus." *Id.*

As direct evidence of discrimination, Chu points to his deposition testimony that members of his department mocked his accent at different times. For workplace comments to provide sufficient direct evidence of discrimination, they must be "1) [related to the plaintiff's protected status]; 2) proximate in time to the [adverse employment action]; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue." *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 655 (5th Cir. 1996).[6] Taking Chu's testimony as true, it does not present direct evidence of intentional discrimination.

We assume *arguendo* that any derisive comments or jokes about Chu's accent were related to his race or national origin. The evidence fails to meet the other three requirements for direct evidence. The comments at issue were made between 2002 and 2003, but Chu did not apply for tenure at MSU until 2006. Such temporal distance attenuates the connection between the actions and the tenure decision.

Nor were the comments made by individuals with authority over the tenure decision. Though it is true that members of his department sat on one

---

[5] *Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 415 (5th Cir. 2003), *abrogated on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009).

[6] Although *Brown* was abrogated by *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000), its test still applies where comments are presented as direct evidence of discrimination. *Laxton v. Gap*, 333 F.3d 572, 583 n.4 (5th Cir. 2003).

No. 14-60129

committee that made a recommendation on tenure, the tenure-approval process consisted of multiple levels of review and avenues for appeal. The faculty members alleged to have made these comments did not make the final decision as to Chu's tenure, and any influence over the decision was limited by the committee and review structures. Finally, the alleged jokes and comments about his accent were not related to the tenure decision at issue, so they are not direct evidence of discrimination.

### B.

In the absence of direct evidence of discrimination, we apply the modified *McDonnell Douglas* burden-shifting framework, under which

> the plaintiff must first demonstrate a prima facie case of discrimination; the defendant then must articulate a legitimate, non-discriminatory reason for its [adverse] decision . . .; and, if the defendant meets its burden of production, the plaintiff must then offer sufficient evidence to create a genuine issue of material fact that either (1) the employer's reason is a pretext or (2) that the employer's reason, while true, is only one of the reasons for its conduct, and another "motivating factor" is the plaintiff's protected characteristic. [7]

University tenure decisions represent a distinct kind of employment action, involving special considerations. "To establish a prima facie case in the context of a denial of tenure, the plaintiff must show that: (1) he belongs to a protected group, (2) he was qualified for tenure, and (3) he was denied tenure in circumstances permitting an [inference] of discrimination."[8] Evidence that supports

---

[7] *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 411-12 (5th Cir. 2007). Chu claims that the *McDonnell Douglas* framework does not apply to his mixed-motives claim under Title VII, relying on *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 98 (2003). That is incorrect. This circuit has modified the *McDonnell Douglas* framework's third step to cover mixed-motives cases. *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 340–41 (5th Cir. 2005).

[8] *Tanik*, 116 F.3d at 775–76; *see also Krystek v. Univ. of S. Miss.*, 164 F.3d 251, 256 (5th Cir. 1999).

a *prima facie* case includes departures from university procedures, conventional evidence of bias against the plaintiff, and evidence that "the plaintiff is found to be qualified for tenure by some significant portion of the departmental faculty, referrants [*sic*, references?] or other scholars in the particular field."[9]

No one disputes that Chu is a member of a protected group under Title VII. Rather, MSU and the Board contend that he was not qualified for tenure because he did not perform satisfactorily in research and did not excel in any of the areas considered for tenure decisions. Chu responds that he was qualified for tenure, and, as evidence of discrimination, he points to a white professor who was less qualified than he and received tenure. He also avers that MSU deviated from its standard procedures and failed to investigate his claims of discrimination, which supports an inference of discrimination.

As discussed above, in addition to other requirements, a tenure candidate at MSU must sufficiently perform in the areas of teaching, research, and service and must excel in one of those areas. Thus, the first consideration is whether Chu met the necessary prerequisites for tenure. The record supports MSU's argument and the district court's conclusion that he did not.

At every level, those who reviewed Chu's application recommended against granting tenure, finding that he had failed to complete sufficient research as a professor. In reaching that conclusion, the decisionmakers looked at a number of factors related to research, including the number of articles Chu published, the quality and prestige of the publishing journals, and the amount of outside research funding he secured.

Chu failed to publish any articles during his first five years at MSU. When he applied for tenure, he had published only three, with several others accepted for publication, but the publishing journals were not highly regarded.

---

[9] *Tanik*, 116 F.3d at 776 (internal quotation marks omitted).

Finally, Chu had secured only $26,000 in research funding, which was far below average for his department. Moreover, those deficiencies in Chu's research were pointed out in his annual performance reviews.[10] Based on this and other evidence, the tenure reviewers determined that Chu did not meet the research requirements for tenure and did not excel in any of the three relevant areas.

As evidence that the tenure decision was discriminatory, Chu claims that MSU granted tenure to a white professor—J.W. Bruce—who was less qualified than he was. The district court addressed that argument, and after examining the relevant qualifications of each, we agree with the court that Bruce was better qualified for tenure and exceeded Chu in each of the three relevant areas. For example, Bruce received a prestigious teaching award, had published more articles than had Chu and in higher-ranked journals, and had secured nearly $500,000 in research funding.

Finally, Chu argues that it is evidence of discrimination that MSU failed to follow its own procedures in investigating his claims of discriminatory treatment. In his district-court pleadings and his briefs, he alleges that MSU did not investigate his complaints. But the record reflects that the university *did* in fact review them. In addressing his appeal of the initial tenure denial, the university's promotion and tenure committee investigated Chu's tenure consideration and unanimously concluded that it was not prejudiced or arbitrary. There was no requirement in the university's procedures that the evaluation process pause if a candidate alleged discrimination, and there is no evidence that the university intentionally avoided investigating claims of racial

---

[10] Each of Chu's performance reviews from 2001 to 2006 pointed to research as an area in need of improvement, calling his progress toward tenure eligibility "unsatisfactory" and noting in 2006, for example, that Chu's "proposal output and research funding level continue to fall short of requirements consistent with tenure or promotion."

No. 14-60129

discrimination.

In conclusion, we agree with the district court that Chu fails to make out a *prima facie* case of discrimination under Title VII. We do not need to analyze the *McDonnell Douglas* framework's second and third steps, and we affirm summary judgment on the Title VII claims.

IV.

Chu appeals the dismissal of his § 1983 claims against the individual defendants—Fogelsong, Magee, and Meredith—based on qualified immunity and for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Chu does not take issue with the district court's sovereign-immunity analysis, so we do not consider it. Nor does he appeal the dismissal of his breach-of-contract claims under § 1983 or his state-law claims. Accordingly, the only remaining claims under § 1983 are for prospective injunctive relief against Fogelsong, Magee, and Meredith in their official capacities and for damages in their personal capacities.

Under § 1983, Chu seeks damages and prospective injunctive relief for violations of equal protection and due process related to his employment and tenure consideration. We review a dismissal under Rule 12(b)(6) *de novo*, accepting all well-pleaded facts as true.[11] To avoid dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[12] In a case alleging constitutional violations against state officials, "[i]f no constitutional right would have been violated were the allegations established, there is no necessity for further

---

[11] *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949–50 (2009) (stating that conclusory allegations do not meet the 12(b)(6) standard); *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2007) (per curiam).

[12] *Iqbal*, 129 S.Ct. at 1949 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

inquiries concerning qualified immunity." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). A § 1983 claim will fail unless it "rests on more than conclusions alone." *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995) (en banc).

### A.

Chu alleges that the individual defendants violated his equal-protection rights by discriminating on the basis of race and failing to treat him similarly to white faculty members. Claims under § 1983 for violation of equal protection may be brought against individual officials, *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257 (2009), but to demonstrate intentional discrimination, Chu must allege sufficient facts to show that the officials "singled out a particular group for disparate treatment and selected [their] course of action at least in part for the purpose of causing its adverse effect on an identifiable group," *Lavernia v. Lynaugh*, 845 F.2d 493, 496 (5th Cir. 1988) (internal quotation marks omitted).

We agree with the district court that Chu fails to state a claim that Fogelsong, Magee, or Meredith violated his equal-protection rights. Chu's complaint is long on conclusions but short on facts, and his brief offers nothing to explain how he is entitled to relief or how the district court erred in its analysis. He merely states that the university discriminated against him and did not discriminate against white faculty, but he fails to elaborate. There are no factual allegations to support that claim. Consequently, Chu has failed to state an equal-protection claim upon which relief may be granted.

### B.

Chu maintains that Fogelsong, Magee, and Meredith violated his due-process rights by purposefully avoiding an investigation into his discrimination complaints and by violating university rules and procedure. Regardless of

whether Chu's theory of relief under § 1983 relies on procedural or substantive due process, he must allege that the individual defendants deprived him of some constitutionally protected life, liberty, or property interest. *See Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010).

Because no life interest is at issue, we first examine whether Chu properly alleges a deprived property interest. "To enjoy a property interest in employment, an employee must have a legitimate claim of entitlement created and defined by existing rules or understandings that stem from an independent source such as state law." *Id.* (internal quotation marks omitted). "Mississippi law is clear that neither state legislation nor state regulations create a legitimate expectation of continued employment for a non-tenured faculty member."[13] So any property interest in continued employment must be found in Chu's terminal employment contract or other features of his employment.

As already discussed, Chu's employment depended on a series of one-year contracts, ending in a final contract after the university had denied him tenure. But as the district court observed, his contract specifically stated that it was nonrenewable, and so he could not expect continued employment based on its terms or any of the previous contracts.[14] Nor does the faculty handbook create a cognizable property interest. *See Spuler v. Pickar*, 958 F.2d 103, 107 (5th Cir. 1992). Chu provides no other basis to support a claim that he was entitled to continued employment,[15] so he has failed to point to any constitutionally protected property interest on which his § 1983 due-process claim can be based.

---

[13] *Whiting v. Univ. of S. Miss.*, 451 F.3d 339, 344 (5th Cir. 2006) (examining Mississippi state laws on university employment).

[14] *See Markwell v. Culwell*, 515 F.2d 1258, 1259 (5th Cir. 1975) (per curiam); *Ray v. Nash*, 438 F. App'x 332, 335 (5th Cir. 2011).

[15] The absence other guarantees for nontenured faculty distinguishes this case from *Samuel v. Holmes*, 138 F.3d 173 (5th Cir. 1998), on which Chu relies.

No. 14-60129

Regarding whether Chu has sufficiently alleged a constitutionally pro-tected liberty interest, state officials who terminate a public employee violate that employee's liberty interest where the termination falsely stigmatizes and harms the employee. *See Arrington v. Cnty. of Dallas*, 970 F.2d 1441, 1447 (5th Cir. 1992). So, for a public employee to succeed on a § 1983 claim for deprivation of a liberty interest, he must show

> (1) that [he] was discharged; (2) that stigmatizing charges were made against [him] in connection with the discharge; (3) that the charges were false; (4) that [he] was not provided notice or an opportunity to be heard prior to [his] discharge; (5) that the charges were made public; (6) that [he] requested a hearing to clear [his] name; and (7) that the employer refused [his] request for a hearing.

*Hughes v. City of Garland*, 204 F.3d 223, 226 (5th Cir. 2000). We agree with the district court that there is nothing in Chu's complaint or the record that avers these elements, and he presents no constitutionally protected liberty interest for his § 1983 claims.

Chu has failed to state claims under § 1983 upon which relief may be granted. He has not alleged sufficient facts showing that Fogelsong, Magee, or Meredith purposefully singled him out for disparate treatment based on race, nor has he shown that any of the defendants deprived him of a constitutionally protected liberty or property interest. As a result, we do not need to reach the qualified-immunity issues related to this suit, and we affirm the dismissal of these claims under Rule 12(b)(6).

V.

Chu has failed to raise or adequately brief the other claims and issues.[16] The remaining matters—his Title VII claims against Fogelsong, Magee, and

---

[16] *See United States v. Thibodeaux*, 211 F.3d 910, 912 (5th Cir. 2000) (failure to raise an issue on appeal constitutes waiver of that argument); *see also* FED. R. APP. P. 28(a)(9)(A);

Meredith; the § 1983 claims against MSU and the Board; and the claims based on breach of contract—are thus waived, and we need not consider the dismissal of them.

The judgment is AFFIRMED.

---

*United States v. Thames*, 214 F.3d 608, 611 n.3 (5th Cir. 2000) (stating that issues not sufficiently briefed are waived).