# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

No. 15-30559
Summary Calendar

March 11, 2016

Lyle W. Cayce
Clerk

ARTHUR MOGHALU,

       Plaintiff - Appellant

v.

BOARD OF SUPERVISORS FOR THE UNIVERSITY OF LOUISIANA
SYSTEM FOR NORTHWESTERN; JOE MORRIS,

       Defendants - Appellees

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 1:11-CV-2203

Before SMITH, BENAVIDES, and HAYNES, Circuit Judges.

PER CURIAM:*

     Plaintiff-Appellant Arthur Moghalu ("Moghalu") sued his former employer ("Defendant") for violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), alleging that he was terminated because of his race and national origin. The case proceeded to a jury trial, and at the close of Moghalu's case-in-

---

   * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

chief, the district court granted Defendant's Rule 50 motion for judgment as a matter of law. We now AFFIRM.

## I. BACKGROUND

Moghalu, an African-American with dual citizenship in the United States and Nigeria, applied for a position as an Assistant Professor in the Department of Criminal Justice at Northwestern State University ("NSU") in 2006. He was interviewed by Joe Morris ("Morris"), the head of the department (then a division of the larger School of Social Sciences), and Morris subsequently recommended to the Provost and Vice President of Academic Affairs that Moghalu be hired. Morris' recommendation was accepted, and Moghalu was offered employment at NSU in early August of 2006. Moghalu's employment contract provided for a 9-month term and was subject to review and renewal on an annual basis. At the time of Moghalu's hiring, he had attained the doctoral status of "ABD," or "all but dissertation," and he represented to Morris that he anticipated completing his dissertation (and thus obtaining his PhD) by December of 2006. Unfortunately, Moghalu's projection was inaccurate—although he reaffirmed his intention to obtain his doctorate in 2007 and 2008 and was repeatedly prompted by Morris to do so, he did not complete his dissertation during his employment at NSU.

More generally, Moghalu's time at NSU appears to have been fraught with acrimony. Morris and other NSU professors frequently received complaints from students about Moghalu's harsh demeanor, quick temper, and overall intractability as a teacher. In Moghalu's 2006 and 2007 annual evaluations, Morris suggested that Moghalu "could be more positive" in his interactions with students. Moghalu, for his part, began to believe that Morris and others in the department were systematically undermining his relationships with students and conspiring to sabotage his career. From Moghalu's perspective, these suspicions manifested themselves in (1) Morris'

orchestration of a phony fender-bender incident in the faculty parking lot, (2) Morris' intentional exclusion of a significant portion of Moghalu's academic work from a department newsletter, and (3) Morris' surreptitious machinations to manipulate Moghalu's course assignments and convince other faculty members that Moghalu should be fired. The record is clear that Morris did indeed convene a retention committee meeting in March of 2008 to consider whether Moghalu's contract should be renewed. The committee, which consisted of four members of the Department of Criminal Justice and one faculty member from outside the department, recommended that Moghalu be terminated. The recommendation was ultimately accepted after consideration by the Board of Supervisors for the University of Louisiana System, and the Provost and Vice President of Academic Affairs notified Moghalu in May of 2008 that he would not be retained at the conclusion of his terminal one-year contract (which would expire in May of 2009).

In the interim, and having caught wind of the committee's vote not to renew his contract, Moghalu filed a grievance against Morris with NSU. The grievance focused on many of the incidents previously mentioned (including course manipulation and the fender-bender) and alleged that Moghalu had been the subject of continuing racial discrimination. NSU's independent grievance committee held a hearing on Moghalu's claims in August of 2008, and after receiving evidence and hearing testimony for two days, the committee concluded there was no merit to the grievance.

Moghalu subsequently filed a charge of discrimination with the Equal Employment Opportunity Commission and received a right-to-sue letter in late 2010. He initiated the present action on January 23, 2011, alleging that NSU terminated him because of his race and national origin in violation of Title

No. 15-30559

VII.[1] The case proceeded to a jury trial,[2] during which Moghalu (appearing pro se) called almost exclusively hostile witnesses from NSU in his case-in-chief. Defendant took each of Moghalu's witnesses (except for Morris and Lisa Abney, the Dean of the College of Liberal Arts) on direct immediately following Moghalu's examinations in order to "expedite" the process, and Defendant indicated at the close of Moghalu's evidence that it intended to call only Morris and Abney (both of whom Moghalu had already extensively examined) as its own witnesses in its case-in-chief. Before doing so, however, Defendant moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(a), arguing that (1) there was "no direct evidence" of discrimination, and (2) the evidence adduced by Moghalu was "insufficient to form the basis of circumstantial evidence of discrimination" because there was no "proof that it had anything to do with either [the fact] that he was black or Nigerian." The district court granted Defendant's motion and stated its reasons orally, noting that the question was "whether we reach[ed] a satisfactory presentation of a prima facie case of discrimination in the first place" and concluding that there was not a sufficient evidentiary basis to "find that racial discrimination [had] been proved by a preponderance of the evidence." Moghalu now appeals.

## II. DISCUSSION

"Where, as here, the district court grants the defendant's motion for judgment as a matter of law under Federal Rule of Civil Procedure 50 after the close of the plaintiff's case in chief, '[w]e review the district court's ruling *de novo*, applying the same Rule 50 standard as did the district court.'" *Fairchild v. All American Check Cashing, Inc.*, __F.3d__, No. 15-60190, 2016 WL 360599,

---

[1] Moghalu also alleged retaliation and brought claims under 42 U.S.C. § 1981 and § 1983 against both the Board of Supervisors and Morris. The § 1981 and § 1983 claims were dismissed, and Moghalu raises only the Title VII disparate treatment claim on appeal.

[2] It does not appear that Defendant ever filed a motion for summary judgment on Moghalu's Title VII claim.

at *4 (5th Cir. Jan. 27, 2016) (quoting *Brennan's Inc. v. Dickie Brennan & Co. Inc.*, 376 F.3d 356, 362 (5th Cir. 2004)). Under Rule 50, judgment as a matter of law is warranted "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." FED. R. CIV. P. 50(a)(1). A legally sufficient evidentiary basis is lacking if "the facts and inferences point so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary verdict." *Brennan's*, 376 F.3d at 362 (citing *Coffel v. Stryker Corp.*, 284 F.3d 625, 630 (5th Cir. 2002)). "In considering a Rule 50 motion, the court must review all of the evidence in the record, drawing all reasonable inferences in favor of the nonmoving party," and "the court may not make credibility determinations or weigh the evidence, as those are jury functions." *Id.* (citing *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 150 (2000)).

Title VII makes it unlawful for a covered employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Liability on a claim that an employer intentionally discharged an employee because of race or national origin—i.e., a "disparate treatment" claim—"depends on whether the protected trait actually motivated the employer's decision." *Young v. United Parcel Service, Inc.*, 135 S.Ct. 1338, 1345 (2015) (quoting *Raytheon Co. v. Hernandez*, 540 U.S. 44, 52 (2003)). "[A] plaintiff can prove disparate treatment either (1) by direct evidence that a workplace . . . decision relied expressly on a protected characteristic, or (2) by

using the burden-shifting framework set forth in *McDonnell Douglas*."[3] *Id.* The *McDonnell Douglas* framework in turn requires a plaintiff to establish, at the threshold, a prima facie case of discrimination by showing that "(1) he is a member of a protected class, (2) he was qualified for the position at issue, (3) he was the subject of an adverse employment action, and (4) he was treated less favorably because of his membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances." *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009). If the plaintiff succeeds in establishing a prima facie case of discrimination, "the burden then shifts to the employer to produce evidence that its actions were justified by a legitimate, nondiscriminatory reason." *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 468 (5th Cir. 2002). This burden of production involves "no credibility assessment," and once it is met, the plaintiff (who at all times retains the ultimate burden of persuasion) has the "opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant [i.e., the employer] were not its true reasons, but were a pretext for discrimination." *Fairchild*, 2016 WL 360599, at *6 (quoting *Young*, 135 S.Ct. at 1345). The plaintiff can also alternatively prove that "the employer's reason[s], while true," were not the "only . . . reasons for its conduct, [as] another 'motivating factor' [was] the

---

[3] Moghalu does not argue on appeal that there was any direct evidence of discrimination, and our independent review of the record reveals none. While Moghalu did testify that he "specifically heard" Dr. Pedro (who participated in the committee decision recommending Moghalu's non-retention) use a racial slur in reference to him, there is no indication that the slur was "proximate in time to the [adverse employment action]" or "related to the employment decision at issue." *Yul Chu v. Miss. State Univ.*, 592 F. App'x 260, 264 (5th Cir. 2014) (quoting *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 655 (5th Cir. 1996), *abrogated on other grounds as recognized in Kelly v. Costco Wholesale Corp.*, No. 14-51168, 2015 WL 8527340, at *3 (5th Cir. Dec. 10. 2015)).

plaintiff's protected characteristic." *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 412 (5th Cir. 2007).

In the context of a Rule 50 motion, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001) (quoting *Reeves*, 530 U.S. at 148). However, "[w]hether judgment as a matter of law is appropriate in any particular case will depend on a number of factors," including "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." *Id.* (quoting *Reeves*, 530 U.S. at 148–49). This court recently noted that if an employer has met its burden of producing nondiscriminatory reasons for the action taken, then the plaintiff, in order to survive a Rule 50 motion at the close of his case-in-chief, must "show that a reasonable trier of fact could conclude that [the employer's] offered reasons were pretextual" by "put[ting] forward evidence rebutting each of the nondiscriminatory reasons the employer articulates." *Fairchild*, 2016 WL 360599, at *6 (quoting *Wallace*, 271 F.3d at 220). Of course, this burden depends on the threshold assumption that "a reasonable trier of fact could find that [the plaintiff] established [his] prima facie case." *Id.*

There is no dispute in the present case that Moghalu met the first three elements of his prima facie burden. Moghalu argues that he met the fourth element as well because his retention was dependent on a PhD requirement that white professors in the department were not subject to.[4] However,

---

[4] Moghalu also claims that he met an "alternative framing" of the fourth prima facie element (which we have sometimes used) by showing that he was "replaced by someone from outside his protected group." *See McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir.

Moghalu's argument misconstrues the nature of the relevant inquiry, which is whether he has shown less favorable treatment than similarly situated employees "under nearly identical circumstances." *Lee*, 574 F.3d at 259. We have explained that to establish this fourth element, a plaintiff "is required to show . . . that his 'conduct *that drew the adverse employment decision* [was] nearly identical to that of the proffered comparator who allegedly drew dissimilar employment decisions.'" *Paske v. Fitzgerald*, 785 F.3d 977, 985 (5th Cir. 2015) (emphasis added) (quoting *Lee*, 574 F.3d at 260). In this regard, it is true that Moghalu adduced evidence suggesting that Morris wished to see him terminated because he never obtained his PhD, and other white professors were retained (in some cases even receiving tenure) despite lacking education beyond a master's degree. However, the record also makes clear that NSU needed to employ a certain number of PhDs in order to maintain its accreditation, and it was *Moghalu* who represented that he anticipated having a PhD within four months of being hired. Furthermore, Moghalu continually reaffirmed—in response to inquiries from Morris—that he would obtain the degree (yet never did). Based on this evidence, Moghalu wholly failed to proffer any comparators who made similar representations at the time of hiring and were retained despite their refusal to follow through on those representations. Additionally, the committee members who voted to recommend Moghalu's termination independently testified that their votes in favor of non-retention stemmed from Moghalu's mistreatment of students. With respect to this aspect of the "conduct that drew the adverse employment decision," Moghalu once again failed to proffer a comparator who was retained despite engaging in

---

2007). Moghalu contends that "a careful reading of the testimony" reveals such a replacement, because Morris testified that there had only ever been one other black professor in the department (who resigned before Moghalu came to NSU). Even drawing reasonable inferences in Moghalu's favor, however, this testimony does nothing to suggest that Moghalu was replaced at all, let alone that he was replaced with someone outside his protected group.

comparably serious conduct. Thus, we conclude that the behavior of any ostensible comparators who lacked PhDs was "not even close to being 'nearly identical'" to Moghalu's.[5] *See id.* (concluding that the behavior of a plaintiff police officer, who was terminated for "refusing [a] drug test" and "conduct unbecoming an officer," was not "nearly identical" to the behavior of a comparator officer who lost his firearm, "failed to report the theft," and then carried a "personal firearm while on duty"). This being the case, Moghalu failed to adduce evidence from which "a reasonable trier of fact could find that [he] established [his] prima facie case." *Fairchild*, 2016 WL 360599, at *6.

We accordingly agree with the district court that, because Moghalu failed to "reach a satisfactory presentation of a prima facie case of discrimination," a reasonable jury would not have a legally sufficient evidentiary basis to find for him on his Title VII disparate treatment claim.[6] Judgment as a matter of law was thus warranted and proper.[7]

---

[5] We note that to the extent the inquiry under the fourth element of the prima facie case involves an employer's proffered reasons for terminating an employee, there is considerable overlap with the "nondiscriminatory reason" and "pretext" prongs of the *McDonnell Douglas* framework. However, as we stated in a recent case, the plaintiff must first "establish a prima facie case by pointing to an appropriate comparator" before the "pretext issue become[s] relevant." *Paske*, 785 F.3d at 985 n.8. Thus, despite the fact that the record is replete with legitimate nondiscriminatory reasons for Moghalu's termination, we do not reach the question of whether Moghalu proffered evidence of pretext beyond his failure to present a suitable comparator who was retained.

[6] Moghalu also asserts that Defendant's Rule 50 motion was deficient, and he cites a Second Circuit case for the proposition that a Rule 50 motion must "identify the specific element that the defendant contends is insufficiently supported." *Wimmer v. Suffolk Cty. Police Dep't*, 176 F.3d 125, 136 (2d Cir. 1999). Based on this caselaw, Moghalu contends that Defendant's oral motion was improper because it "failed to articulate any of the elements of a prima facie case of discrimination." This argument, however, confuses the elements of a Title VII disparate treatment claim with the elements of the *McDonnell Douglas* burden-shifting framework for proving discrimination through circumstantial evidence. Indeed, as noted above, Defendant *did* specifically identify its contention that Moghalu had failed to adduce evidence linking his termination to his race or national origin, and the district court agreed. As such, there is no merit to Moghalu's argument on this point.

[7] Our decision today stems solely from our independent review of the record and trial transcript, which fails to support Moghalu's argument on appeal and does not provide a basis

No. 15-30559

AFFIRMED.

---

for overturning the district court's ruling on the Rule 50 motion. We note that we were wholly unaided by Defendant's elliptical (bordering on incomprehensible) brief. Indeed, the only point on which Defendant made a cogent argument in support of the district court's judgment relates to an evidentiary ruling that Moghalu does not raise on appeal.